**No. 21-56310**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

SANA KAPPOUTA,

*Plaintiff-Appellant,*

v.

VALIANT INTEGRATED SERVICES LLC &
THE ELECTRONIC ON-RAMP, INC.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
Southern District of California (San Diego)
No. 20-cv-01501
Hon. Todd W. Robinson, District Judge

---

**DEFENDANT-APPELLEE VALIANT INTEGRATED SERVICES LLC'S
ANSWERING BRIEF**

---

Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Tel: 202-639-6000
mhellman@jenner.com

Kirsten Spira
Sati Harutyunyan
JENNER & BLOCK LLP
515 South Flower St., Ste. 3300
Los Angeles, CA 90071
Tel: 213-239-5100
kspira@jenner.com

*Attorneys for Defendant-Appellee Valiant Integrated Services LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record for Defendant-Appellee Valiant Integrated Services LLC states that Valiant Integrated Services LLC is a wholly-owned subsidiary of GC Valiant LLC.

**Signature:** /s/ *Kirsten Spira*      **Date:** August 12, 2022

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES .................................................................................. iv

INTRODUCTION ..................................................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATUTORY AND REGULATORY PROVISOINS .............................................3

STATEMENT OF JURISDICTION........................................................................3

STATEMENT OF THE CASE................................................................................3

I.     Appellant's Background and Position at the Baghdad Military Installation ....3

II.    The Alleged Shove During a Night Out at a Local Bar ...................................4

III.   Ms. Kappouta's Statements About the Alleged Shove ....................................4

IV.    The Vacancy in Basra and Ms. Kappouta's Rejection of the Transfer.............5

V.     Ms. Kappouta's Federal Complaint and the District Court's Dismissal of the Same...................................................................................................................6

SUMMARY OF ARGUMENT ...............................................................................7

STANDARD OF REVIEW .....................................................................................11

ARGUMENT ...........................................................................................................11

I.     The District Court Correctly Held That the Allegations Here Did Not Rise to the Level of an Offense Covered By the NDAA.........................................11

       A.    Reporting an after-hours shove between co-workers at a bar is not covered by the NDAA ...........................................................................13

       B.    Contrary to Plaintiff's assertions, the district court followed sound and applicable authority.........................................................................19

II.    The Alleged Misconduct Is Not "Related To" a Department of Defense
       Contract ...................................................................................................23

       A.    The text, structure, and history of the NDAA requires an actual
             nexus between a protected disclosure and a Defense contract or
             grant ............................................................................................24

       B.    FAR 52.203-13 does not provide the required nexus ...........................27

       C.    Plaintiff could not have had a reasonable belief that her disclosure
             was "related to" a government contract.................................................34

CONCLUSION ....................................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Fluor Intercontinental, Inc.*, No. 19-CV-0289, 2021 WL 837335 (E.D. Va. Jan. 4, 2021) ........................................................29

*Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Resources, Inc.*, 299 F.3d 1007 (9th Cir. 2002) ...............................................14, 15

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009)........................................11

*Cejka v. Vectrus Systems Corp.*, 823 F. App'x 591 (10th Cir. 2020).....................32

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .............................11

*Craine v. National Science Foundation*, 687 F. App'x 682 (10th Cir. 2017) ........................................................................................13, 17, 21, 36

*Davis v. Ector County, Texas*, 40 F.3d 777 (5th Cir. 1994) ...................................22

*Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645 (Mich. 1993) .........................22

*El v. Merit Systems Protection Board*, 663 F. App'x 921 (Fed. Cir. 2016) ........................................................................................................18

*Ficarra v. SourceAmerica*, No. 19-CV-01025, 2020 WL 1606396 (E.D. Va. Apr. 1, 2020) ............................................................................9, 17, 25, 26

*Frederick v. Department of Justice*, 73 F.3d 349 (Fed. Cir. 1996), *supplemented by* No. 95-3194, 1996 WL 293120 (Fed. Cir. May 22, 1996) ..............................................................................................................16

*Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939 (9th Cir. 2021) ..............................................................................................................11

*Gipbson v. Walker*, 386 F. App'x 598 (9th Cir. 2010) ...........................................34

*Greer v. General Dynamics Information Technology, Inc.*, 808 F. App'x 191 (4th Cir.), *cert. denied*, 141 S. Ct. 369 (2020) .................................12

*Herman v. Department of Justice*, 193 F.3d 1375 (Fed. Cir. 1999)............16, 26, 35

*Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116 (9th Cir. 2008) ............................................................................................11

*Langer v. Department of Treasury*, 265 F.3d 1259 (Fed. Cir. 2001) .....................18

*Lillie v. ManTech International Corp.*, No. 17CV02538, 2019 WL 3387732 (C.D. Cal. July 26, 2019), *aff'd*, 837 F. App'x 455 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2861 (2021) .................................................20, 21

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021)....................................34

*Puri v. Khalsa*, 844 F.3d 1152 (9th Cir. 2017) ........................................................11

*Sargent v. Pompeo*, No. 19-CV-00620, 2020 WL 5505361 (D.D.C. Sept. 11, 2020) ............................................................................................17, 22

*Shaw v. Bank of America Corp.*, 946 F.3d 533 (9th Cir. 2019).............................13

*United States ex rel. Cody v. ManTech International, Corp.*, 746 F. App'x 166 (4th Cir. 2018) ................................................................27

*Willis v. Department of Agriculture*, 141 F.3d 1139 (Fed. Cir. 1998) .............13, 18

## STATUTES

5 U.S.C. § 2302(b)(8) (1994).....................................................................................18

10 U.S.C. § 2409(a)(1)(A) ................................................ 8, 12, 14, 23, 24, 26, 34

10 U.S.C. § 2409(a)(1)(C) .........................................................................................14

10 U.S.C. § 4701 ..........................................................................................................7

18 U.S.C. § 798............................................................................................................21

33 U.S.C. § 1362(6) ...................................................................................................15

41 U.S.C. § 4712(a)(1)..........................................................................................17, 25

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3388......................................7

## OTHER AUTHORITIES

48 C.F.R. § 3.1004(a)......................................................................31

48 C.F.R. § 52.203-13................................................................ 27-28

48 C.F.R. § 52.203-13(b)(2)..........................................................24

48 C.F.R. § 52.203-13(b)(2)(i)................................................. 28-29

48 C.F.R. § 52.203-13(b)(2)(ii) ............................................... 28-29

48 C.F.R. § 52.203-13(b)(3)(i)...................................................29, 30

48 C.F.R. § 52.203-13(c) ..........................................................24, 30

48 C.F.R. § 52.203-13(c)(2)(i)(A) .....................................24, 28, 29, 31

48 C.F.R. § 52.203-13(c)(2)(i)(B) ..............................................28

48 C.F.R. § 52.203-13(c)(2)(ii)....................................................31

48 C.F.R. § 52.203-13(c)(2)(ii)(C) ............................................30

48 C.F.R. § 52.203-13(c)(2)(ii)(D) .............................................31

Relate, *American Heritage Dictionary*, https://ahdictionary.com/word/
    search.html?q=relate (last visited Aug. 9, 2022)................................25

Relate, *Oxford-English Dictionary*, https://www.oed.com/view/Entry/
    161807?rskey=c0I8v3&result=1#eid (last visited Aug. 9, 2022) ....................25

Relate To, *MerriamWebster.com*, https://www.merriam-webster.com/
    dictionary/relate%20to (last visited Aug. 9, 2022)............................25

# INTRODUCTION

In this case, Plaintiff-Appellant Sana Kappouta seeks federal whistleblower protection for reporting that a colleague pushed past her at a bar. The alleged shove did not injure Plaintiff or knock her down. And Plaintiff conceded that the shove was not in connection with a work dispute; the shove took place after hours when Plaintiff was out at a bar with colleagues talking about a missing cell phone. These allegations do not give rise to federal whistleblower protection as a matter of law.

As the district court and courts around the country have consistently held, the text, structure, and history of federal whistleblower laws, including the one at issue here, demonstrate that their statutory protections extend only to employees who report significant violations of law regarding matters of public concern. Plaintiff, who provided linguistic services in support of Army contracts, cannot point to a single case finding that conduct on par with a shove constitutes the kind of violation the federal whistleblower laws protect. The alleged conduct—even if construed as a crime—looks nothing like the kind of misconduct Congress enacted the whistleblower laws to cover, such as theft of federal funds or specific threats to public safety.

In any event, Plaintiff's claim fails for a separate, independent reason: the whistleblower law at issue here requires that the violation be *related to* a defense contract. As the district court found, the shove did not relate to any contract—there

1

is no allegation the shove had anything to do with Plaintiff's work at all. Faced with that obvious disconnect, Plaintiff nonetheless contends that there is a nexus between the shove and a defense contract because Defendant-Appellee Valiant's contract with the Army contained a standard clause—mandated by regulation to be in every federal contract of significance—requiring the contractor to promote ethical behavior and exercise due diligence to minimize misconduct. But that clause does not impose on Defendant a boundless obligation to prevent misconduct wherever it might be found—or risk liability under a whistleblower law. To the contrary, that clause addresses misconduct *in connection with the contract*. An alleged after-hours shove at a bar having nothing to do with contracted-for work is, by definition, not related to a defense contract. Were it otherwise, literally every legal violation could give rise to whistleblower protection, when Congress has expressly stated they do not.

As the district court held, Plaintiff's whistleblower claim runs contrary to the text of the statute and finds no support in the case law. Plaintiff's claim was properly dismissed on two independent grounds, and that judgment should be affirmed.

## STATEMENT OF THE ISSUES

Whether the district court correctly dismissed Plaintiff Sana Kappouta's lawsuit for failing to plausibly allege that she disclosed conduct constituting a "violation of law, rule, or regulation" that is "related to" Defendant-Appellee Valiant

Integrated Services LLC's ("Valiant") contract with the Department of Defense, under the National Defense Authorization Act, 10 U.S.C. § 2409.

## STATUTORY AND REGULATORY PROVISOINS

All pertinent statutory and regulatory provisions are included in the Addendum to Plaintiff-Appellant's Opening Brief.

## STATEMENT OF JURISDICTION

Valiant agrees with Plaintiff-Appellant's statement of jurisdiction.

## STATEMENT OF THE CASE

### I.    Appellant's Background and Position at the Baghdad Military Installation.

Plaintiff-Appellant Ms. Kappouta is a linguist and Arabic cultural advisor with experience supporting the U.S. Government on missions, including in conflict zones. ER-144, 161-162. She was hired by Electronic On-Ramp, Inc. ("EOR") in 2015 and was "transferred several times as needed by the diplomatic and military missions she supported." *Id.* In 2017, Plaintiff was transferred to a military installation in Baghdad, Iraq ("Baghdad Compound"), where she worked and resided. ER-144, 162, 184. At the Baghdad Compound, Plaintiff provided linguistic services to U.S. military officers as a subcontractor to Valiant, which held a contract

with the U.S. Department of the Army for military services.[1]  ER-159, 162.  While her work performance was solid, Ms. Kappouta developed the reputation as someone prone to "personality conflicts" and "involved in gossip."  ER-144, 184.

## II.     The Alleged Shove During a Night Out at a Local Bar.

On the night of December 7, 2017, Plaintiff was out for drinks with some co-workers at a local bar. While chatting at the bar about a missing cell phone, Ms. Kappouta was allegedly shoved by one of her colleagues, Sarah Maher.  ER-145, 185.  Ms. Kappouta did not fall or incur any injuries.  *See* ER-145.  Nor, according to the record, did she leave the bar or alert any security personnel.  ER-185.  Rather, she told Parween Babani, the assistant program manager, about the push, received a hug in support, and decided to "let the incident go."  ER-185; App. Dkt. 18 Appellant's Opening Br. ("AOB") 4.

## III.    Ms. Kappouta's Statements About the Alleged Shove.

The next day, December 8, 2017, two on-base State Department officials from the Regional Security Office ("RSO") contacted Ms. Kappouta requesting a statement because they had received information about the prior night's events.  ER-

---

[1] In her complaint, Ms. Kappouta alleges that as a subcontractor's employee, she was jointly employed by EOR and Valiant during her tenure at the Baghdad Compound. ER-162. For purposes of this appeal only, because it is not relevant to the outcome, Valiant does not dispute whether Ms. Kappouta's characterization is correct.

186. Several days later, on December 12, 2017, feeling obligated to do so, Ms. Kappouta submitted a written statement of the alleged incident to the RSO but specified that her statement was "just for the records and not a report." ER-186. On December 13, 2017, Ms. Kappouta forwarded her statement to her employer, EOR. ER-180, 187.

## IV. The Vacancy in Basra and Ms. Kappouta's Rejection of the Transfer.

Approximately one month later, on January 10, 2018, the Army told Valiant it needed a "qualified and reliable" linguist to fill a vacancy in Basra, Iraq. ER-187, 180. As it had done in the past for other missions, Valiant recommended Ms. Kappouta based on her skills and solid work performance. ER-187, 190. A secondary consideration was potential morale improvement for Plaintiff, who was not thriving interpersonally outside of work. *See* ER-188, 190. The Army understood that Valiant's recommendation to select Ms. Kappouta for the Basra role was "based on her background, education, and ability to work independently." ER-190.

When Valiant proposed the reassignment to Ms. Kappouta on January 28, 2018, she refused the transfer and instead requested resignation paperwork. ER-180, 189, 191. Immediately after refusing the transfer, Ms. Kappouta violated protocol and confronted Army officials to whom she provided linguist services to complain

about the transfer. ER-189-190.[2] The following day, apparently having "changed her mind," Plaintiff told Valiant she would "like to accept the transfer to Basra." ER-181. At that point, Ms. Kappouta alleged Valiant had already decided to terminate her for refusing the mission and violating protocol by confronting Valiant's Army customer with complaints about the transfer, which "created a bad image for the company and possibly damaged working relations with the military." ER-191.

## V.     Ms. Kappouta's Federal Complaint and the District Court's Dismissal of the Same.

After leaving Valiant, Ms. Kappouta reported the alleged retaliation to the DoD Inspector General's Office ("DoD OIG"). ER-169. The DoD OIG investigated and recommended that Ms. Kappouta be reinstated to her position, but the Army took no steps to have Ms. Kappouta reinstated. ER-171. Nor did the Army take any other action in connection with Ms. Kappouta's report. Then, on August 4, 2020, Plaintiff filed her federal whistleblower complaint stemming from the alleged December 2017 bar shove. ER-172.

Valiant filed a motion to dismiss, which the district court granted on two independent grounds. ER-11-26, 216. First, the court below held that "the shove

---

[2] As reflected in her EOR personnel file, Ms. Kappouta was written up in 2017 for reporting issues with a purportedly messy roommate directly to military personnel instead of following protocol and reporting to Valiant. ER-184, 188.

[Ms. Kappouta reported] was not a protected disclosure because Plaintiff could not have reasonably believed it was a violation of law warranting whistleblowing protection as envisioned by lawmakers." ER-22. Second, the district court determined that "Plaintiff's co-worker's off-the-clock shove was not related to Valiant's Defense contract," meaning that disclosure of the shove could not constitute a protected disclosure. ER-24.

The district court's dismissal order gave Ms. Kappouta leave to amend. ER-25-26. Instead, Plaintiff filed a motion, which the district court granted, to "waive the right to amend and reduce the Court's findings to a final judgment of dismissal with prejudice" because she did "not believe additional facts can or should be pled in good faith." ER-7-8, 10. This appeal followed. ER-4-5.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's dismissal of Plaintiff's complaint for failure to state a claim under the National Defense Authorization Act, 10 U.S.C. § 2409, *et seq*. ("NDAA" or "Section 2409").[3] Ms. Kappouta alleged she was retaliated against after submitting an incident report that triggered the NDAA's

---

[3] This statute has since been renumbered as 10 U.S.C. § 4701, but Valiant continues to refer to it by its former numbering for consistency with prior briefing. *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. 116–283, 134 Stat. 3388. Plaintiff refers to the same statute as the Defense Contractor Whistleblower Protection Act. *See* AOB 1.

whistleblower protections. Specifically, Plaintiff claimed she reported that, while she was at a bar in December 2017, a colleague shoved past her without injuring her. The district court correctly ruled that Plaintiff's disclosure of the alleged after-hours, non-work-related bar shove did not qualify as a protected disclosure under the NDAA, and dismissed the complaint. This Court should affirm.

Ms. Kappouta's retaliation claim is not cognizable under Section 2409. Section 2409's whistleblower protections are reserved for statutorily enumerated protected disclosures that are "*related to* a Department [of Defense] contract . . . ." 10 U.S.C. § 2409(a)(1)(A) (emphasis added). Whether Ms. Kappouta's report of the bar shove qualifies as a "protected disclosure" necessarily depends on whether the reported information qualifies as a "violation of law, rule, or regulation" that is "related to" Valiant's contract with the Department of Defense. It does not.

First, the district court correctly held that Ms. Kappouta's allegations fall far short of the level of an offense covered by the NDAA. *See* ER-20-24. The text, structure, and history of the whistleblower language in question, and the unbroken line of case law interpreting it all establish that the provisions reach only significant violations concerning matters of public importance. No case has ever held that conduct on par with the wrongful conduct alleged here constitutes a "violation of law" within the meaning of the federal whistleblower laws. Ms. Kappouta's primary response is that the shove must warrant whistleblower protection because it could

8

constitute simple criminal assault. But many other cases have considered allegations that could have been characterized as criminal—including allegations of fraud and even harassment—and all of them rejected whistleblower status as a matter of law because the allegations were not akin to the kind of "gross mismanagement," "substantial and specific danger to public health or safety," and other kinds of wrongdoing with which the statute is concerned.

Second, regardless of whether a co-worker's alleged shove at a bar could be considered a "violation of law" covered by the NDAA, the shove was in no way "related to" the DoD-Valiant contract. For a disclosure to be "related to" a DoD contract under the NDAA, there must be an "actual nexus." *Ficarra v. SourceAmerica*, No. 19-CV-01025, 2020 WL 1606396, at *4 (E.D. Va. Apr. 1, 2020). Here, there is no nexus between the contract governing Valiant's provision of linguist and other services to the Army and allegations that one coworker shoved another at a bar after work. Plaintiff claims that Valiant's obligation under Federal Acquisition Regulation ("FAR") 52.203-13—namely, to evaluate its business systems and ethics policies to ensure those systems and policies are designed to deter misconduct—somehow provides the required nexus.[4] An after-hours shove unrelated to work has nothing to do with business systems and ethics policies on its

---

[4] This standardized FAR clause was incorporated by reference into the DoD-Valiant contract.

9

face, and in any case, the clause by its plain terms applies only to misconduct in connection *with the contract*. It does not create a roving obligation to address misconduct of any sort anywhere unconnected to the contract. By Ms. Kappouta's logic, virtually any misconduct by a contractor's employee—regardless of when, where, and how it occurred—would be "related to" a defense contract so as to trigger federal whistleblower protections. Courts have repeatedly rejected that sweeping interpretation of the statutory language in question, and the district court was right to do the same.

Finally, Plaintiff argues, for the first time on appeal, that even if her disclosure does not qualify as a violation of law related to the DoD-Valiant contract, she is entitled to NDAA protections because she "reasonably believed" it did. AOB 44-47. Plaintiff waived this argument by failing to make it below. In any event, Ms. Kappouta has pleaded no facts to support a reasonable belief that she was making a protected disclosure under the NDAA. On the contrary, she has pleaded that the shove was not related to her work, and thus by her own allegations could not have reasonably believed that she was reporting evidence of a violation of a law related to a DoD contract.

Accordingly, this Court should affirm the district court's dismissal and hold that Plaintiff's allegations do not constitute a "violation of law, rule, or regulation" that is "related to" the DoD-Valiant contract.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal for failure to state a claim. *Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017). It accepts as "true" all well-pleaded allegations of material fact and "construe[s]" them "in the light most favorable" to the plaintiffs, *id.*, but need not "accept legal conclusions cast in the form of factual allegations," *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). This Court reviews the district court's factual findings on a motion to dismiss for failure to state a claim for clear error, *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021), and reviews the district court's legal determinations *de novo*, *Berger v. City of Seattle*, 569 F.3d 1029, 1035 (9th Cir. 2009) (en banc). This Court "may affirm" on "any ground supported by the record." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

## ARGUMENT

I. **The District Court Correctly Held That the Allegations Here Did Not Rise to the Level of an Offense Covered By the NDAA.**

Section 2409 protects an employee of a defense contractor from reprisal for disclosing information that the employee reasonably believes is evidence of "[g]ross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant,

or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant." 10 U.S.C. § 2409(a)(1)(A).

To "establish a *prima facie* case of unlawful retaliation" under the NDAA, a whistleblower plaintiff must show that, among other things, she "engaged in 'protected activity'"—namely, that she disclosed evidence of one of the statutorily enumerated categories of conduct. *See Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 F. App'x 191, 193 (4th Cir.), *cert. denied*, 141 S. Ct. 369 (2020) (citation omitted). Plaintiff alleges that her statements about the December 2017 push qualify as a "violation of law, rule, or regulation related to a Department [of Defense] contract."[5]

The district court rejected Plaintiff's argument and correctly held that the disclosed misconduct here—an after-hours shove at a bar—did not rise to the level of violation covered by the NDAA. EOR-20-22. Courts have consistently recognized that federal whistleblowing statutes, including the NDAA, do not reach all allegations of wrongdoing, but are instead intended to protect contractor

---

[5] Plaintiff does not argue, nor could she, that she reasonably believed she was disclosing evidence of the other statutorily enumerated categories in this subsection—*i.e.*, "[g]ross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, [or] an abuse of authority relating to a Department contract or grant." 10 U.S.C. § 2409(a)(1)(A).

employees who risk their personal job security to report serious violations of law. *See, e.g.*, *Craine v. Nat'l Sci. Found.*, 687 F. App'x 682, 691-92, 692 n.4 (10th Cir. 2017); *Willis v. Dep't of Agric.*, 141 F.3d 1139, 1143 (Fed. Cir. 1998).

Plaintiff fails to cite a single case—and Valiant is aware of none—holding that conduct on par with the alleged after-hours shove at a bar in this case constitutes the kind of legal violation the federal whistleblower laws encompass. This Court should follow the well-reasoned decisions in the Tenth Circuit and the Federal Circuit and affirm the district court's decision that Plaintiff failed to plausibly allege that her statements were protected disclosures under the NDAA.

### A. Reporting an after-hours shove between co-workers at a bar is not covered by the NDAA.

1.    As numerous cases have held, the text, structure, and history of the NDAA establish that federal whistleblower protection does not attach to every conceivable form of wrongdoing. Statutes are "construed as a whole." *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 539 (9th Cir. 2019) (citation omitted). And the NDAA's reference to a "violation of law, rule, or regulation" does not occur in isolation, but rather in the context of a larger list consisting exclusively of serious kinds of wrongdoing regarding matters of public concern:

> Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a

Department contract ... [or] [a] substantial and specific danger to public health or safety.

10 U.S.C. § 2409(a)(1)(A), (C).

As the district court held, ER-21-22, in the statute, the term "violation of law, rule, or regulation," is properly read to reach only violations on par with the other misconduct encompassed by the statute. "When a statute contains a list of specific items and a general item, we usually deem the general item to be of the same category or class as the more specifically enumerated items." *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1016 (9th Cir. 2002) (citation omitted). Here, the NDAA is directed towards rooting out "[g]ross mismanagement," "gross waste," "abuse of authority," and a "substantial and specific danger to public health or safety." Thus, even assuming that a shove could "literally" be characterized as a "violation of law," giving "violation of law" that interpretation would make that term entirely out of character with the rest of the prohibited conduct on that list, all of which is exclusively concerned with "gross" misconduct and other significant breaches of public trust. *See id.* (giving broad construction where other terms are narrow would "contravene clear congressional intent, give unintended effect to the ambiguous language of the Act and undermine the integrity of its prohibitions").

For example, in *Association to Protect*, to determine what kinds of "biological materials" counted as "pollutants" under the Clean Water Act, this Court looked to "the more specific items in the illustrative list of pollutants" in the statute, which included terms such as "radioactive materials," "wrecked or discarded equipment," and "incinerator residue."[6] *Id*. Given that context, the Court concluded that the list's more general term, "biological materials," should not be construed "literally" to reach "*all*" biological materials, but rather only waste material of a human or industrial process, like the specific examples listed in the statute. *See id.* at 1016-17 (rejecting argument that natural waste from shellfish was a "biological material[]" within the meaning of the statute). The same analysis applies here.

2.     Legislative history confirms the point. As the district court explained, ER-14-15, the whistleblower language in the NDAA is materially identical to the language in the Whistleblower Protection Act ("WPA"), which Congress enacted as "a means to protect the Pentagon employee who discloses billions of dollars in cost overruns, the [General Services Administration] employee who discloses widespread fraud, and the nuclear engineer who questions the safety of certain

---

[6] The Clean Water Act provision at issue in that case states: "The term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, *biological materials*, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6) (emphasis added).

nuclear plants." *Frederick v. Dep't of Just.*, 73 F.3d 349, 353 (Fed. Cir. 1996), *supplemented by* No. 95-3194, 1996 WL 293120 (Fed. Cir. May 22, 1996) (citing S. Rep. No. 95–969, at 8 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2723, 2730-31). This legislative history "indicates that the [Whistleblower Protection] Act was not intended to apply to disclosure of trivial or *de minimis* matters." *Herman v. Dep't of Just.*, 193 F.3d 1375, 1379 (Fed. Cir. 1999). An after-hours shove at a bar looks nothing like the kind of violation Congress intended to be subject to whistleblower protection.

3. Accordingly, courts have without fail limited the whistleblower language at issue here. No case cited by Plaintiff or that Defendant is aware of has ever held that conduct akin to a shove at a bar is the type of violation the federal whistleblower laws reach. Indeed, courts have routinely held that equally or more serious allegations of misconduct do not rise to the level of what the federal whistleblower laws were intended to encompass.

For example, a court held that a contractor employee's report of sexual harassment and discrimination did not fall within the protections of Section 4712, a materially identical whistleblower statute to Section 2409 that also covers disclosures of "a violation of law, rule, or regulation related to a Federal

contract . . . ."[7]  *See Ficarra*, 2020 WL 1606396, at *3 (concluding Sections 2409 and 4712 cover similar statutorily defined disclosures).  While such conduct would undeniably be both illegal and reprehensible, the court recognized that the misconduct was "of a different type than the examples the statute gives," and that expanding the statute's reach to any Title VII violation would impermissibly "sweep any allegations of illegal activity by a government contractor within the scope of § 4712" and "stretch the statute's text beyond its plain meaning."  *Sargent v. Pompeo*, No. 19-CV-00620, 2020 WL 5505361, at *14-15 (D.D.C. Sept. 11, 2020). The Tenth Circuit reached the same conclusion in another Section 4712 case involving allegations of fraud by scientists publishing a research paper supported by federal funds.  Although a "fraudulent" manuscript might constitute a violation of law in some sense, the Tenth Circuit held that it did not "fall within" the kinds of violation encompassed by the statute.  *Craine*, 687 F. App'x at 690.

---

[7] The relevant portion of Section 4712 is nearly identical to that of Section 2409. Section 4712 covers disclosure of "information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant." 41 U.S.C. § 4712(a)(1).  The difference between the two statutes is that Section 4712 extends protections to all federal contractor employees whereas the earlier-enacted Section 2409 is limited to employees of contractors holding contracts with the Department of Defense or NASA.

Likewise, in a series of cases involving materially identical language from the WPA,[8] the Federal Circuit explained that "disclosures of trivial violations do not constitute protected disclosures," *El v. Merit Sys. Prot. Bd.*, 663 F. App'x 921, 924 (Fed. Cir. 2016) (citation omitted), because the whistleblower laws were "enacted to protect employees who report genuine violations of law." *Langer v. Dep't of Treasury*, 265 F.3d 1259, 1267 (Fed. Cir. 2001) (citation omitted). Accordingly, *not* "every report by a government employee concerning the possible breach of law or regulation by a private party is a protected disclosure," *Willis*, 141 F.3d at 1144. Rather, the WPA—and the NDAA—were "intended to protect government employees who risk their own personal job security for the advancement of the public good[.]" *Id*. Thus, in these cases, the Federal Circuit has held that various kinds of misconduct—including alleged violations of a policy about handling envelopes that contained confidential information, alleged violations of confidential inmate counseling records in a federal prison camp, and delays of travel claim

---

[8] The relevant language of the Whistleblower Protection Act in 2001 closely mirrors that of the NDAA. Specifically, the WPA stated then, and continues to state, that a government official could not "take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee ... because of ... any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences-- (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8) (1994).

reimbursements from a government agency—do not rise to the level of violations that fall within the whistleblower statutes.

The district court here rightly held in light of this statutory text and unbroken string of case law that reporting a shove at a bar is not the type of violation that the NDAA was designed to protect. Assuming that pushing past someone with a shove could "technically qualif[y] as a violation of law," the district court concluded that a disinterested observer "could not reasonably conclude it evidenced a violation of law *deserving whistleblower protection*." ER-21-22 (emphasis added).

### B. Contrary to Plaintiff's assertions, the district court followed sound and applicable authority.

Plaintiff offers three arguments as to why the district court erred. First, she argues that the district court was wrong to consider cases applying whistleblower laws other than the NDAA. AOB 24. Second, Plaintiff contends that the alleged conduct must be sufficiently serious because it could be characterized as a crime, *i.e.*, simple assault. *Id.* Third, Plaintiff points to a handful of state law cases she claims support her position. AOB 32. Plaintiff is wrong on all counts.

1.     The district court did not err in relying on cases considering WPA, NDAA, or Section 4712. Courts in this Circuit look to the WPA as persuasive authority on the NDAA, given that the two acts "similarly protect[] federal employees from retaliatory adverse employment action[s] where they disclose

information pertaining to the same categories of misconduct[.]" *See Lillie v. ManTech Int'l Corp.*, No. 17-cv-02538, 2019 WL 3387732, at *17 (C.D. Cal. July 26, 2019), *aff'd*, 837 F. App'x 455 (9th Cir. 2020), *cert denied*, 141 S. Ct. 2861 (2021). Even Plaintiff acknowledges as much, agreeing that identical language in the WPA and the NDAA "tends to demonstrate congressional intent that the phrase should be interpreted similarly across the various statutes." AOB 25.

2. Nor does the fact that the shove could be characterized as the crime of simple assault elevate the violation into one that the federal whistleblower laws reach. It is not the label on the conduct that matters, but the nature of the conduct. If Plaintiff were correct, the whistleblower statutes would be stretched beyond recognition. A contractor's employee swiping a notepad for personal use could be construed as petty theft, and a contractor's employee lying about a colleague's personal life could be construed as slander, but although that conduct is wrongful and perhaps even technically criminal, surely these are not the types of "violation of law" that Congress enacted whistleblower legislation to root out.

Indeed, many of the violations at issue in the cases the district court relied upon *could* have been construed as crimes—but nonetheless those violations did not fall within the ambit of the NDAA. For example, in *Craine*, Dr. Craine disclosed evidence of alleged fraud and misrepresentations made by his colleague—conduct that *could* have constituted criminal fraud. Nevertheless, both the National Science

Foundation and the Tenth Circuit "concluded that Dr. Craine's communications did not fall within the statute." *Craine*, 687 F. App'x at 688, 690. The accusations of harassment in *Sargent* likewise might also have constituted a crime, but did not rise to the level of a violation covered by the law. 2020 WL 5505361, at *14-15.

Similarly, in *Lillie v. ManTech International Corp.*, the court rejected the plaintiff's allegations that he had been retaliated against after he reported that he received allegedly unauthorized access to "classified/proprietary" information owned by a third-party government contractor. The court concluded that the plaintiff did not identify "a specific law, rule, or regulation that was violated," and the evidence at trial did not "permit a reasonable inference that plaintiff reasonably suspected illegal conduct." 2019 WL 3387732, at *1, *18. However, a similar fact pattern, artfully pled, *could* have triggered one of the many federal laws that prohibit granting access of classified information to unauthorized persons. *See, e.g.,* 18 U.S.C. § 798.[9]

---

[9] In fact, the *Lillie* jury found that the plaintiff made a protected disclosure under the NDAA and proved "by a preponderance of the evidence that he had reasonable cause to believe that the access to third party data was a violation of state/federal statute or a violation of or noncompliance with a local/state/federal rule or regulation[.]" 2019 WL 3387732, at *8. The district court disagreed in its judgment as a matter of law. *Id*. at *19.

The same is true here. Even if the after-hours shove at a bar *could* have been charged as simple assault, that does not mean that that conduct constitutes a violation of law that triggers federal whistleblower protections under the NDAA.

3. Third, and finally, Plaintiff cites *state* law whistleblower cases that she claims support her position. AOB 32. But those cases are factually and legally distinct. They involve different kinds of wrongdoing from the after-hours shove at issue here. *Id.* (discussing claims concerning, *inter alia*, a pattern of sexual harassment, kickbacks, exposing infants to dangerous gas, and carrying out police duties while intoxicated).[10] They also employ different statutory language. As explained, courts have consistently construed the NDAA and materially identical statutes to reach only significant violations of law concerning matters of public significance given the text, structure, and history of those laws. The state whistleblower laws invoked by Plaintiff concern a "violation of law" without the additional context present in the federal laws. *E.g.*, *Davis v. Ector Cnty., Tex.*, 40 F.3d 777, 785 (5th Cir. 1994) (applying Texas law); *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 647-48 (Mich. 1993) (applying Michigan whistleblower law).

---

[10] Plaintiff cites one case involving allegations of assault and battery. *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645 (Mich. 1993) (applying Michigan law). That case involved allegations of an on-the-job fight where the aggressor "grabbed [the victim] by the collar … tried to pull him across the counter … tore buttons off his shirt … and left fingerprints on his neck." *Id.* at 646.

22

As such, these cases provide no basis to depart from the unbroken line of federal whistleblower authority finding allegations like those here to be non-actionable as a matter of law.

## II.     The Alleged Misconduct Is Not "Related To" a Department of Defense Contract.

Even if the bar shove could qualify as a "violation of law, rule, or regulation" for purposes of the NDAA, which it does not, Ms. Kappouta still failed to state a claim because that conduct was not "*related to* a Department [of Defense] contract (including the competition for or negotiation of a contract) or grant." 10 U.S.C. § 2409(a)(1)(A) (emphasis added). Section 2409, like other federal whistleblower statutes, does not protect disclosure of every supposed violation of law. Rather, it protects only disclosures of statutorily enumerated types of wrongdoing *related to* a defense contract or grant.

As the district court explained, Section 2409's "related to" language demands an "actual nexus between a plaintiff's disclosure and a DoD" contract. ER-23 (collecting cases). The district court therefore concluded that "there is no clear direct link between an after-hours shove involving two Valiant co-workers and Valiant's DoD contract." *Id*.

Plaintiff contends that the shove is "related to" the DoD-Valiant contract simply because the contract incorporates a standard FAR clause that requires

23

contractors to develop a: "[b]usiness ethics awareness and compliance program and internal control system," and exercise "due diligence" in promoting ethical behavior and minimizing misconduct. 48 C.F.R. § 52.203-13(b)(2), (c); *see* AOB 37-38. But that clause—which appears in every government solicitation contract of any significance—is limited to "improper conduct *in connection with Government contracts*." 48 C.F.R. § 52.203-13(c)(2)(i)(A) (emphasis added). By its plain terms, it is not related to misconduct unconnected to the contract, and thus it cannot make a violation (an after-hours shove) that is itself unrelated to the contract, relate to the contract. Plaintiff's interpretation would transform every kind of violation into a whistleblower scenario when Congress expressly limited the universe to violations that are related to a contract.

The district court correctly rejected Plaintiff's similar argument below, and concluded that "an intoxicated, after-hours shove between co-workers in a bar cannot reasonably be related to Valiant's DoD contract—even accounting for the FAR clause." ER-24. This Court should affirm the district court's order.

### A. The text, structure, and history of the NDAA requires an actual nexus between a protected disclosure and a Defense contract or grant.

1. Starting with the text, the NDAA protects disclosures of "a violation of law, rule, or regulation *related to* a Department [of Defense] contract (including the competition for or negotiation of a contract) or grant." 10 U.S.C. § 2409(a)(1)(A)

(emphasis added). Although the NDAA does not define "related to," a court interpreting this phrase in the statute concluded that "[t]he plain meaning of 'related to' is an association or connection between two or more things," *Ficarra*, 2020 WL 1606396, at *4[11] and concluded that "[t]he 'related to' language in both § 2409 and § 4712 requires an *actual nexus* between a plaintiff's disclosure and a DoD, NASA, or federal contract." *Id.* (emphasis added).[12] As such, the "related to" clause serves to *narrow* the types of "violation of law, rule, or regulation" that falls within the statute, rather than, as Plaintiff suggests, to *broaden* the types of misconduct that warrant whistleblower protection. *See* AOB 36.

2. The structure of the NDAA statute supports the same conclusion. The other types of disclosures specifically protected within the same provisions of Sections 2409 and 4712—evidence of gross mismanagement of a federal contract, gross waste of federal funds, and abuse of authority relating to a Department contract

---

[11] The court in *Ficarra* cited to several dictionary definitions: Relate To, *MerriamWebster.com*, https://www.merriam-webster.com/dictionary/relate%20to (last visited Aug. 9, 2022) ("to be connected with (someone or something); to be about (someone or something"); Relate, *Oxford-English Dictionary*, https://www.oed.com/view/Entry/161807?rskey=c0I8v3&result=1#eid (last visited Aug. 9, 2022) ("to connect, to link; to establish a relation between"); Relate, *American Heritage Dictionary*, https://ahdictionary.com/word/search.html?q=relate (last visited Aug. 9, 2022) ("to establish or demonstrate a connection between"). 2020 WL 1606396, at *4 n.2.

[12] Section 4712 similarly protects disclosures of "a violation of law, rule, or regulation *related to* a Federal contract (including the competition for or negotiation of a contract) or grant." 41 U.S.C. § 4712(a)(1) (emphasis added).

or grant—"underscore the importance of a *significant connection* between the protected disclosure and a federal contract." *Ficarra*, 2020 WL 1606396, at \*4-5 (emphasis added). Because the other listed types of protected disclosures explicitly involve federal contracts or Defense Department contracts, "it follows that the 'related to' language in § 4712 and § 2409 requires that there be an actual nexus between the employee's disclosure and a federal contract for the disclosure to be protected under the statutes." *Id.* at \*5.

What's more, the other explicitly listed protected disclosures all relate to financial harm or fraud that might befall the federal government, and thus Congress may have wanted to incentivize employees of federal contractors to come forward and disclose evidence of gross waste, gross mismanagement, or other forms of fraud. The specific example the statute lists of the type of "violation of law, rule, or regulation" that is "related to" a Department contract—*i.e.,* "the competition for or negotiation of a contract"—further clarifies the narrow scope of the type of violations that Section 2409 as enacted covers. 10 U.S.C. § 2409(a)(1)(A).

3. Legislative history confirms this congressional intent. Whistleblower statutes were first enacted as "a means to protect, for example, the 'pentagon employee who discloses billions of dollars in cost overruns, the [agency] employee who discloses widespread fraud, and the nuclear engineer who questions the safety of certain nuclear plants.'" *Herman*, 193 F.3d at 1379 (citations omitted). These

26

laws were not passed as a means for an employee to elevate an interpersonal conflict with another employee to the highest levels of government review, under the guise of blowing the whistle on personnel decisions.

4.     Cases in which plaintiffs have established a *prima facie* case with respect to the "related to" aspect of the NDAA's requirements all have a much more significant connection to the contract than exists here.  For example, in *United States ex rel. Cody v. ManTech International, Corp.*, plaintiffs presented evidence that during the government contract bidding process, their contractor-employer "downplayed the expected labor costs to perform the contract" to beat out its competition and win the work.  746 F. App'x 166, 181 (4th Cir. 2018).  One contractor's employee shoving another contractor's employee after work, at a bar, and without even an alleged connection to the services provided under the defense contract, does not qualify as a disclosure of a violation of law "related to" the DoD-Valiant contract.

**B.  FAR 52.203-13 does not provide the required nexus.**

Ms. Kappouta bears the burden to demonstrate that her disclosure was "related to" a Department contract or grant.  Finding no case law or other authority to support her expansive read of the statutory language, Plaintiff attempts to establish the requisite nexus by pointing to language in standard FAR clause 52.203-13 ("FAR 52.203-13"), which is incorporated into the DoD-Valiant contract.  *See* 48 C.F.R. §

52.203-13. Specifically, Ms. Kappouta asserts that, because FAR 52.203-13 imposes a general duty on contractors to "[e]stablish standards and procedures to facilitate timely discovery of improper conduct in connection with Government contracts," and to "[e]nsure corrective measures are promptly instituted in and carried out," 48 C.F.R. § 52.203-13(c)(2)(i)(A)-(B), a contractor employee who reports *any* evidence of alleged misconduct to their supervisor should be granted federal whistleblower protections, as any such report is necessarily "related to" the DoD contract. *See* AOB 37-38. This cannot be true.

1.     At the motion to dismiss stage, Plaintiff contended that the shove was "related to" the DoD-Valiant contract because under FAR 52.203-13, Valiant was obligated to "exercise due diligence to prevent criminal activity and promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law." ER-48 (quoting DoD OIG Report at 24-25).[13]

The district court correctly rejected this strained connection. Recognizing that "courts agree that for a protected whistleblowing disclosure to be 'related to' a

---

[13] Plaintiff was likely referring to 48 C.F.R. § 52.203-13(b)(2)(i)-(ii), which states:
     "(b) Code of business ethics and conduct. . . .
     (2) The Contractor shall—
          (i) Exercise due diligence to prevent and detect criminal conduct; and
          (ii) Otherwise promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law."

contract, it must have an 'actual nexus,' or connection, tethering it to the contract," ER-23 (citing cases), the district court concluded that the "purported connection between the intoxicated shove and Defendant's DoD contract is a standardized clause broadly requiring the *promotion* of a company culture *encouraging* ethical conduct whose more stringent provisions were not triggered by Plaintiff's assault disclosure." ER-24.

The district court is correct. The clause in question requires contractors to report on criminal conduct "involving fraud, conflict of interest, bribery, or gratuity" or violations of the Civil False Claims Act that occur "*in connection with the award, performance, or closeout of [the specific] contract.*" 48 C.F.R. § 52.203-13(b)(3)(i) (emphasis added); *see also Anderson v. Fluor Intercontinental, Inc.*, No. 19-CV-0289, 2021 WL 837335, at \*22-23 (E.D. Va. Jan. 4, 2021) (explaining parameters of disclosure rule). The clause also requires contractors to develop internal controls that "facilitate timely discovery of improper conduct *in connection with Government contracts*." 48 C.F.R. § 52.203-13(c)(2)(i)(A) (emphasis added). Plaintiff cannot bootstrap a provision concerned with contractual "performance" into a basis for claiming that conduct unrelated to that performance provides the relevant nexus for whistleblower law purposes.

Moreover, the FAR clause does not even reach the kind of conduct alleged to be criminal here—*i.e.*, simple assault. The FAR clause requires contractors to

29

"disclose" situations for which they have credible evidence of "[a] violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity" (again where that violation occurs "in connection with the award, performance, or closeout of [the specific] contract"). 48 C.F.R. § 52.203-13(b)(3)(i). Plaintiff's allegations of a shove, even if it could be described as an allegation of simple assault, is not the kind of criminal allegation with which the regulation is concerned.

2.      Recognizing that these provisions foreclose her position, for the first time on appeal, Ms. Kappouta turns to yet another portion of the same FAR clause in an attempt to find the statutorily required "related to" nexus. After striking out with FAR 52.203-13(b), Plaintiff now leans on FAR 52.203-13(c), which obligates Valiant to periodically review its "internal controls" to prevent criminal conduct and provide an internal reporting mechanism—"such as a hotline, . . . by which employees may report suspected instances of improper conduct"—and to encourage such reporting. AOB 37-38; 48 C.F.R. § 52.203-13(c).[14]

---

[14] 48 C.F.R. § 52.203-13(c) requires Contractors to establish an "ongoing business ethics awareness and compliance program," as well as an "internal control system," the latter of which involves:

> 1. "Periodic reviews of company . . . internal controls for compliance with the Contractor's code of business ethics and conduct . . . , including . . . [m]onitoring and auditing to detect criminal conduct," 48 C.F.R. § 52.203-13(c)(2)(ii)(C); and
>
> 2. "An internal reporting mechanism, such as a hotline, which allows for anonymity or confidentiality, by which employees may report suspected

Again, an after-hours shove at a bar is not a violation that is "related to" these obligations. The "internal control system" this provision refers to mandates controls "*in connection with Government contracts*." 48 C.F.R. § 52.203-13(c)(2)(i)(A) (emphasis added). The provision does not create an obligation to adopt controls to address conduct that is *not* in connection with Government contracts. Put another way, this provision *requires* a connection with the contract be relevant; it does not *supply* that connection in the first instance. Moreover, "internal controls . . . such as a hotline" are by their very nature forward-looking preventative measures. 48 C.F.R. § 52.203-13(c)(2)(ii). They are not concerned with mandating a particular response to a past event. An after-hours shove simply is not related to the obligation to have a "hotline" or to conduct periodic reviews of a contractor's internal controls.

Plaintiff's position is tantamount to contending that *any* ethical violation could trigger the NDAA's protections via the requirements in the FAR clause—a position with no limiting principle. This FAR clause is required to be included in literally *every* government solicitation and contract of significant size. 48 C.F.R. § 3.1004(a). If *any* ethical violation counted, so long as the DoD contract incorporated the FAR clause by reference, then all conceivable ethical violations that employees might report would count—including errors like the ones reported in *Craine*; the

---

instances of improper conduct, and instructions that encourage employees to make such reports." 48 C.F.R. § 52.203-13(c)(2)(ii)(D).

harassment and discrimination claims reported in *Sargent*; and the disclosure of classified documents reported in *Lillie*. In all those cases, however, the courts concluded these were not the types of violations the statute could reach.

3. As a fallback, Ms. Kappouta contends that "reporting <u>any</u> violation of <u>criminal</u> law committed by a defense contractor's employee, particularly where the contractor was obligated to comply with [FAR 52.203-13], 'relates to' the contract." AOB 38. Plaintiff argues that, because "by default," the phrase "'related to' generally has a broadening effect on what follows," the court should "therefore assume that in enacting the [NDAA], Congress intended to provide an 'expansive' definition for any statutorily defined misconduct that 'stands in some relation' to a defense contract." AOB 36.[15]

But that wrongly assumes the conclusion. The FAR provisions at issue here speak to a contractor's obligation to detect misconduct and, as discussed above, those provisions limit that obligation to misconduct in connection with the performance of the contract. *See supra*. A shove that is concededly unrelated to work issues and that did not take place at the worksite or during work hours does not

---

[15] As Plaintiff recognizes, the issue in the case cited for this proposition, *Cejka v. Vectrus Systems Corp.*, 823 F. App'x 591, 596-97 (10th Cir. 2020), was not whether the reported security violations were "related to" the primary DoD contract, but whether the statute could reach a DoD *subcontract*. In that case, there was no dispute that it was "related to" a DoD subcontract, and therefore the court did not analyze what counts for purposes of "stand[ing] in some relation to" a contract.

"relate to" a contract provision that is limited to work-related misconduct. Plaintiff's interpretation would sweep in *every* instance of misconduct involving government contractor employees, regardless of whether—as here—the violation had no actual nexus to the contract.

In any event, Ms. Kappouta has never alleged that Valiant somehow failed to follow the requirements of FAR 52.203-13. Plaintiff makes no argument that Valiant lacked either an ethics awareness program or an internal control mechanism, or that she was blowing the whistle on *Valiant*'s failure to comply with these FAR requirements. Rather, Plaintiff was reporting a colleague's misconduct to a supervisor.

Valiant does not take the position that a criminal assault could never be related to a government contract. But here, a shove that had nothing to do with a government contract cannot be brought within the specifically enumerated types of violations Congress sought to incentivize when passing the federal whistleblower statutes, simply because both people involved in the scuffle were employees of a contractor; whose contract with the DoD incorporated a standard FAR Clause; which in turn directed contractors to set up business ethics courses and reporting procedures; which included monitoring for criminal and other unethical behavior and providing an opportunity for employees to report such conduct via a hotline. To use Plaintiff's proposed standard, this lengthy connect-the-dots between a shove at

33

a bar and a DoD contract is "a tenuous, remote, or peripheral connection," AOB 35-38 (citations omitted), and therefore the two are not "related" for purposes of the NDAA.

### C. Plaintiff could not have had a reasonable belief that her disclosure was "related to" a government contract.

Finally, Ms. Kappouta argues that, even if her disclosure was not protected under the statute, she still deserves whistleblower protections because she *reasonably believed* it was. AOB 44-48. Plaintiff first raises this argument on appeal, and therefore has waived it. *E.g., Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1004 (9th Cir. 2021); *Gipbsin v. Walker*, 386 F. App'x 598, 599 (9th Cir. 2010). In any event, it is meritless. The relevant question here is whether Plaintiff could have reasonably believed that an after-hours shove at a bar that was concededly unrelated to her work was a violation of law related to a Department of Defense contract. To state that question is to answer it: any such belief would not have been reasonable.

The text of the statute indicates that an employee of a contractor cannot face reprisal for disclosing to a designated person "information that the employee *reasonably believes* is evidence of . . . a violation of law, rule, or regulation related to a Department contract[.]" 10 U.S.C. § 2409(a)(1)(A) (emphasis added). In the substantially similar WPA context, a plaintiff must "establish that a reasonable person in [Plaintiff's] position would believe that the disclosures were protected

disclosures under the WPA[.]" *Herman*, 193 F.3d at 1378. Given that "the WPA was enacted to protect employees who report genuine violations of law, not to encourage employees to report minor or inadvertent miscues," courts have concluded a whistleblower "could not have had a reasonable belief that [the government actor] was violating a law, rule, or regulation within the meaning of the WPA" where the alleged action was of "a trivial nature." *Id.* at 1381 (citing *Frederick*, 73 F.3d at 353).

So too here. In order to be covered by Section 2409, a plaintiff must have reasonably believed that she was reporting a violation of law, rule, or regulation related to a Department contract. Ms. Kappouta told her supervisor about the affront while she was at the bar, and then the next day, reluctantly provided a statement—"just for the records and not a report," ER-186—to officers inquiring about the incident. Plaintiff later provided a written statement and sent an email to her employer about the alleged assault. ER-180. At none of these junctures was there any evidence that she reasonably believed what she was reporting was a "violation of law, rule, or regulation related to" a DoD contract. Nor could any reasonable employee have believed that telling a supervisor about a colleague's after-work behavior was evidence of a violation of law related to Valiant's contract with the Department of Defense.

35

Also absent is any evidence that Plaintiff subjectively believed she was reporting a violation that falls within the statute. *See Craine,* 687 F. App'x at 691 (concluding based on other whistleblower laws that Section 4712's "reasonable belief" has "both a subjective and an objective component") (citation omitted). On the night of the incident, December 7, 2017, Plaintiff reported to her supervisor, at the bar, that her colleague "was intoxicated and pushed her out of the way" while Plaintiff was talking to another employee about a missing cell phone. ER-185. When Plaintiff provided a written statement to the Regional Security Officers on or about December 12, 2017, she made clear her statement was "just for the records and not a report." ER-186. At no point did Plaintiff call what happened to her an assault, a crime, or otherwise a violation of law, rule, or regulation. At no point did Plaintiff suggest pressing charges, or seeking any other form of punishment for her alleged assailant. Nothing in the record indicates that Plaintiff in fact believed she was providing evidence of a violation of law the disclosure of which was related to the DoD-Valiant contract.

That Plaintiff allegedly told RSO she feared retaliation by her supervisor is a red herring for purposes of a Section 2409 analysis. The test is not whether the employee reasonably believed she might be retaliated against for reporting misconduct, but rather whether the employee reasonably believed she was reporting evidence of a violation of a law related to a DoD contract (or another statutorily

enumerated type of misconduct). There is no evidence that Plaintiff in fact believed—or could have reasonably believed—that she was reporting evidence of a violation of law, rule, or regulation related to a DoD contract.

## CONCLUSION

The judgment should be affirmed.

Dated: August 12, 2022                          Respectfully submitted,

                                               */s/ Kirsten Spira*
Matthew S. Hellman                              Kirsten Spira
JENNER & BLOCK LLP                              Sati Harutyunyan
1099 New York Ave. NW, Suite 900                JENNER & BLOCK LLP
Washington, DC 20001                            515 South Flower St., Ste. 3300
Tel: 202-639-6000                               Los Angeles, CA 90071
mhellman@jenner.com                             Tel: 213-239-5100
                                               kspira@jenner.com

*Attorneys for Defendant-Appellee Valiant Integrated Services LLC*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned attorney states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

 **Signature:** /s/ *Kirsten Spira*    **Date:** August 12, 2022

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 21-56310.**

I am the attorney or self-represented party.

**This brief contains 8,619 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify this brief:

[x] complies with the word limit of Cir. R. 32-1.


**Signature:** /s/ *Kirsten Spira*      **Date:** August 12, 2022